UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA ANN WORNUM,<br><br>Plaintiff,<br><br>v.<br><br>AURORA LOAN SERVICES, INC., ET AL.,<br><br>Defendants.<br>_____/ | Case No. C-11-02189 JCS<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT  [Docket Nos. 5 & 6]** |

## I. INTRODUCTION

Plaintiff initiated this action in the Superior Court of the County of Marin on April 4, 2011, challenging the sale of the property located at 570 Riviera Circle, Larkspur, California. Defendant Aurora Loan Services, Inc. ("Aurora") removed to federal court on the basis of diversity and federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332 and now brings a Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") and a Motion to Strike Portions of Plaintiff's Complaint ("Motion to Strike").  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).  The Court finds that the motions are suitable for determination without oral argument under Civil Local Rule 7-1(b). For the reasons stated below, the Motion to Dismiss is GRANTED.  Because the Court dismisses Plaintiff's claims, the Motion to Strike is DENIED without prejudice.

## II. REQUEST FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of seven documents that are matters of public record and/or directly referenced in Plaintiff's complaint.  Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's Complaint Filed by Defendant Aurora Loan Services LLC (F/K/A Aurora Loan Services, Inc) ("RJN").  Plaintiff has not objected to Defendant's request or challenged the authenticity of any of the attached documents.  Accordingly, the Court takes judicial

1  notice of these records pursuant to Rule 201 of the Federal Rule of Evidence.  Further, the Court
2  may consider these documents, along with the allegations in Plaintiff's complaint, on a motion to
3  dismiss under Rule 12(b)(6) of the Federal Rules of Evidence.  *See Catholic League for Religious*
4  *and Civil Rights v. City and County of San Francisco*, 464 F.Supp.2d 938, 941 (N.D.Cal.2006).

**III.   BACKGROUND**

   **A.   Factual Background**

Plaintiff obtained a loan from First Magnus Financial Corporation on December 8, 2003, for $980,000 secured by the property located at 570 Riviera Circle, Larkspur, CA.[1]  RJN, Ex. 1.  Aurora was assigned the servicing rights to Plaintiff's loan effective February 1, 2004.  RJN, Ex. 2 (Notice of Assignment, Sale or Transfer of Servicing Rights).  Plaintiff defaulted on her loan, and a Notice of Default was recorded on June 5, 2008.  Complaint, ¶ 5; RJN, Ex. 3 (Notice of Default).  Plaintiff alleges that in 2009, she "began the loan modification process with Aurora."  Complaint, ¶ 9.  In 2010, she was placed on a "modified monthly trial payment" by Aurora.  *Id*., ¶ 6.  According to Plaintiff, she continued making trial payments on the Aurora loan and she "continued working with Aurora on the modification."  Complaint, ¶¶ 6-8.  Ultimately, however, Aurora declined her request for modification of the loan.  *Id*., ¶ 8.  Plaintiff alleges that the denial was the result of errors in Aurora's appraisal of the property, incorrect calculation of Plaintiff's income and failure to take into account the fact that a foreclosure sale resulting from Plaintiff's default on a second line of credit on the same property had been rescinded.  *Id*.  A notice of trustees sale was recorded on October 14, 2010.  RJN, Ex. 4.

Plaintiff initiated this action on April 4, 2011 seeking to prevent the foreclosure sale, and the superior court entered a temporary restraining order prohibiting the sale pending a hearing scheduled for May 24, 2011.  Prior to the hearing, Defendant removed the action to this Court on May 4, 2011.

---

[1] Plaintiff alleges in her complaint that she obtained the loan from Aurora.  *See* Complaint, ¶ 4.  This allegation is directly contradicted by the deed of trust, which is signed by Plaintiff and recorded in the Official Records of Marin County.  *See* RJN, Ex. 1.  In her Opposition brief, Plaintiff makes no attempt to explain the inconsistency between the allegation in her complaint and the public record showing that Plaintiff did not obtain the initial mortgage loan from Aurora, implicitly conceding that she obtained the original loan from First Magnus Financial Corporation rather than Aurora.

2

In the complaint, Plaintiff asserts the following claims: 1) breach of contract; 2) breach of implied covenant of good faith and fair dealing based on alleged violations of Cal. Civ. Code Section 2923, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; 3) Specific Performance for Compliance with State Laws (mislabeled "fourth cause of action"); 4) declaratory relief (mislabeled "fifth cause of action"); 5) promissory estoppel (mislabeled sixth cause of action").

### B. The Motion to Dismiss

Defendant asserts that all of Plaintiff's claims are barred for two reasons. First, under California's "strict tender rule," if a defaulting borrower seeks to challenge or set aside a foreclosure, the borrower must allege and establish a valid tender. Motion to Dismiss at 3 (citing, *inter alia*, *Arnold Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 579 (1984)). According to Defendant, because Plaintiff has not alleged an ability to tender, she lacks standing as to all of her claims purporting to challenge the sale of the property. *Id.* at 3. Second, Defendant asserts that all of Plaintiff's claims are preempted by federal law, namely, the Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1461, and the regulations promulgated thereunder by the Office of Thrift Savings ("OTS"), which extends to residential mortgage lending and servicing activity conducted by a federally chartered savings bank. *Id.* at 4 (citing 12 C.F.R. § 560.2 & *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008)). Aurora Loan Services is a wholly owned operating subsidiary of Aurora Bank, FSB ("Aurora Bank"), formerly known as Lehman Brothers, FSB. RJN, Exs. 5-6. As such, the origination and servicing operations of Aurora are subject to a comprehensive scheme of federal regulations under HOLA. *Id.*

Defendant further contends that each individual claim asserted by Plaintiff fails. First, Defendant asserts that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail because Plaintiff cannot plead either the existence of contract between Plaintiff and Aurora or Plaintiff's performance, which are required elements for both types of claims. *Id.* at 6-8. In addition, to the extent that Plaintiff's breach of contract claim is based on Defendant's failure to meet the requirements of Cal. Civ. Code Section 2923.5, that claim fails for

the additional reasons that the provision did not become operative until after the Notice of Default was recorded and in any event, the allegations in the Complaint are sufficient to show that Aurora complied with its requirements. *Id*. at 6-7.

Defendant also argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because the underlying statutes upon which Plaintiff relies in support of this claim – Cal. Civ. Code Section 2923.6, RESPA, TILA and the FDCPA – do not give rise to valid claims. *Id*. at 8-11. Defendant asserts that Cal. Civ. Code Section 2923.6 does not confer a private right of action. *Id*. at 8-9 (citing *Farner v. Countrywide Home Loans*, 2009 WL 189025, at *2 (S.D.Cal., January 26, 2009) & *Pittman v. Barclay's Capital Real Estate, Inc*., 2009 WL 1108889, at *3 (S.D. Cal., April 24, 2009)). Defendant argues that Plaintiff also fails to state any claim under RESPA because although Plaintiff alleges that Defendant refused to provide her with a response to a Qualified Written Request ("QWR") and Request for Accounting that she submitted to Defendant on November 30, 2010, Plaintiff does not allege that she has suffered any injury based on the alleged violation, as required to state a claim under RESPA. *Id*. at 9-10 (citing *Hutchinson v. Delaware Savings Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)). Plaintiff's claim fails under TILA as well, Defendant argues, because mortgage servicers cannot be held liable under that statute. *Id*. (citing *Williams v. Saxon Mortgage Servs., Inc.*, 2007 WL 2828752 (S.D. Ala. Sept. 27, 2007) & 15 U.S.C. § 1641(f)). Finally, Defendant argues that the claim fails under the FDCPA because Aurora is not a "debt collector" for the purposes of that statute and therefore is not liable under the FDCPA. *Id*. (citing 15 U.S.C. § 1692a).

Defendant argues that Plaintiff's claim for specific performance, in which Plaintiff seeks an order requiring Aurora to comply with Cal. Civ. Code Section 2923.5 by contacting her to discuss her financial situation and exploring options to avoid foreclosure, fails because the remedy of specific performance arises out of contract and here, as discussed above, Plaintiff fails to plead elements that are required to establish a breach of contract. *Id*. at 11. Further, to the extent that Plaintiff's specific performance claim is based on Cal. Civ. Code Section 2923.5, the claim fails for the same reasons discussed in connection with the claim for breach of implied covenant of good faith and fair dealing. *Id*. at 12. Finally, to the extent the claim also references Cal. Civ. Code

Section 2923.52, requiring a 90-day period between the notice of default and the notice of trustees sale, Aurora is exempt from that provision because is holds a valid and current exemption under Section 2923.53 from the Commissioner of Corporations. *Id*. (citing RJN, Ex. 7). In any event, Aurora argues, that provision confers no private right of action, as discussed above. *Id*.

Defendant argues that plaintiff's claim for declaratory relief also fails because equitable relief is not a claim but a remedy that depends on the underlying claims. *Id*. at 12-13. Because the underlying claims fail, so too does the claim for declaratory relief, Defendant asserts. *Id*.

Finally, Defendant asserts that Plaintiff's promissory estoppel claim fails as a matter of law. First, Defendant argues that because the claim is based on the alleged promise on the part of Aurora not to foreclose on Plaintiff's property while evaluating her for loan modification, the claim fails because Aurora has not yet foreclosed on the Property. *Id*. at 13. Second, Defendant asserts that the claim fails because at the time it recorded the notice of trustees sale it had completed the loan modification evaluation and denied Plaintiff's request, as Plaintiff herself alleges. *Id*. Thus, Plaintiff cannot allege that she was injured as a result of her reliance on Aurora's promise, as required to state a claim for promissory estoppel. *Id.*

In her Opposition brief, Plaintiff does not address Defendant's substantive legal arguments. Rather, she contends that as a pro se plaintiff, her pleadings should be construed liberally and that she should be granted leave to amend her claims to the extent that they are deficient.

## IV. ANALYSIS

### A. Legal Standard

#### 1. Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id.* at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* at 1964. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id.* at 1974. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 1965 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

### B. Whether Claims Fail Under Strict Tender Rule

Under California law, "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578 (1984); *see also Karlsen v. Am. Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117 (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."). Because Plaintiff has failed to allege that she tendered or offered to tender the full amount owed under the loan, as is required, all of her claims fail, as a matter of law, under Rule 12(b)(6).

### C. Whether Claims Fail as a Result of Field Preemption

Defendant asserts that Plaintiff's claims are preempted under the doctrine of field preemption by HOLA, citing 12 C.F.R. § 560.2 & *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008). 12 C.F.R. § 560.2 provides, in part, as follows:

6

> a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), [OTS] is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a). Subsection (b) of the regulation offers specific examples of types of state laws that are preempted. Among the enumerated state laws preempted are the following:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

12 C.F.R. § 560.2(b). Finally, subsection (c) creates an exclusion to preemption for state laws that "only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)," and lists specific types of state laws, including "real property law," that are *not* preempted under the regulation.

The Office of Thrift Supervision has instructed that the question of whether a state law should be preempted under § 560.2 should be analyzed as follows:

7

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).

In *Silvas*, the plaintiffs asserted claims under California's Unfair Competition Law ("UCL") based on the allegation that the defendant had advertised that certain payments were non-refundable whereas TILA required that the defendant make a refund available. *Silvas*, 514 F.3d at 1003. Although the statute of limitations under TILA had expired at the time the plaintiffs filed the action, the statute of limitations under the UCL had not. *Id*. The question before the court was whether the UCL claim was preempted by HOLA. *Id*. The court held, based on 12 C.F.R. § 560.2, that HOLA preempted the plaintiffs' claims because the plaintiffs sought to use the UCL to directly regulate credit activities. *Id*. at 1006 (applying 12 C.F.R. § 560.2(b)). In reaching this conclusion, the court relied, in part, on the fact that subsection (b) of 12 C.F.R. § 560.2, which lists specific types of state laws that are preempted by HOLA, includes state laws that regulate "loan-related fees" and "disclosure and advertising." *Id*. (citing 12 C.F.R. § 560.2(b)(5) & (9)).

Numerous courts in this district have held that state laws requiring banks to provide specific notices or disclosures during the foreclosure process are preempted by HOLA. *See, e.g.*, *Giordano v. Wachovia Mortg., FSB*, 2010 WL 5148428, at *3-4 (N.D.Cal. Dec.14, 2010)(finding that HOLA preempts state laws setting forth procedures for filing a notice of default and conducting a foreclosure sale); *Odinma v. Aurora Loan Services*, 2010 WL 1199886, at *8 (N.D.Cal. Mar.23, 2010)(holding that Cal. Civ. Code Section 2923.5, requiring that lenders contact borrowers before initiating foreclosure, is preempted by HOLA). On the other hand, when a claim is based on the general duty not to misrepresent material facts, and when application of a state law does not regulate lending activity, district courts have found that the claims are not preempted by HOLA. *See, e.g., DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at * 5-6 (N.D. Cal. Jan. 28, 2011) (finding that HOLA did not preempt UCL claim based on misrepresentation but dismissing claim for lack of

standing because plaintiffs' allegations did not establish any loss of money or property that resulted from alleged misrepresentations by Wells Fargo during loan modification negotiations); *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 417 (N.D.Cal.2009) (distinguishing between allegations of inadequate disclosures of loan terms and affirmative, material misrepresentations); *Ibarra v. Loan City*, 2010 WL 415284, at *5 (S.D.Cal. Jan.27, 2010) (misrepresentation of material facts not preempted by HOLA).

The Court addresses below whether the claims asserted by Plaintiff are preempted by HOLA.

### 1. Breach of Contract Claim

Plaintiff's breach of contract claim is based on Defendant's failure to contact her prior to initiating foreclosure proceedings, as required under Cal. Civ. Code Section 2923.5. In *Odinma*, a court in this district held that a claim under Section 2923.5 regulated the processing and servicing of a mortgage and therefore, was preempted by HOLA. 2010 WL 1199886, at *8 (N.D.Cal. Mar. 23, 2010); *see also* 12 C.F.R. § 560.2(b)(10). This Court agrees.

The Court further notes that although one state court has concluded that Section 2923.5 is *not* preempted, *see Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), this Court respectfully disagrees with the court in *Mabry*. In that case, the Court reasoned that Section 2923.5 was not preempted by HOLA because it related to foreclosure law, which is properly classified as "real property law," and therefore is not preempted under 12 C.F.R. § 560.2(c). A number of district courts that have addressed the issue, however, have rejected the state court's conclusion in *Mabry. See, e.g., Giordano v. Wachovia Mort., FSB*, 2010 WL 5148428, at * 4 (N.D.Cal., Dec. 14, 2010);*Taguinod v. World Sav. Bank, FSB*, 755 F.Supp.2d 1064 (C.D.Cal.,2010); *Ngoc Nguyen v. Wells Fargo Bank*, N.A., 749 F.Supp.2d 1022, 1033,(N.D.Cal., 2010).

In *Giordano*, the court explained its rejection of the holding in *Mabry* on the question of preemption as follows:

> *Mabry* notes that the process of foreclosure traditionally has been a matter of state real property law, and goes on to state:
>> Given the traditional state control over mortgage foreclosure laws, it is logical to conclude that if the Office of Thrift Supervision wanted to include foreclosure as within the preempted category of loan servicing, it would have been explicit. Nothing

9

> prevented the office from simply adding the words "foreclosure of" to section 560.2(b)(10).

*Mabry*, 185 Cal.App.4th at 231, 110 Cal.Rptr.3d 201.

> The *Mabry* court is correct that it would have been quite simple for OTS expressly to bring foreclosure proceedings within § 560.2(b)(10). However, even if it were to conclude that foreclosure proceedings as such do not fall within § 560.2(b)(10), this Court nonetheless would dismiss Claim 1 as preempted. Applying the analytical framework set forth by OTS and approved in *Silvas*, the first step is determining whether the state law in question falls within § 560.2(b). *Silvas*, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sep. 30, 1996)). Assuming for purposes of discussion that the answer is no, the second step is to determine whether the state law affects lending; if so, a presumption arises that the law is preempted. *Id.* Clearly, state laws governing foreclosure proceedings affect lending. Accordingly, there is a presumption that those state laws are preempted. The presumption may be rebutted only if the law in question clearly fits within § 560.2(c). Id. For these purposes, paragraph (c) is intended to be interpreted narrowly, and any doubt must be resolved in favor of preemption. *Id*.
>
> *Mabry* does not expressly address the presumption, nor does it specify which category set forth in paragraph (c) applies. Instead, *Mabry* states generally that § 2923.5 is not preempted because it can be construed very narrowly to provide only for additional time prior to foreclosure. *Mabry*, 185 Cal.App.4th at 231, 110 Cal.Rptr.3d 201. Presumably the *Mabry* court believed that § 2923.5 falls within the catch-all category covering "[a]ny other law that OTS, upon review, finds: (i)[f]urthers a vital state interest; and (ii) [e]ither has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." 12 C.F.R. § 560.2(c)(6). An argument certainly could be made that § 2923.5 furthers a vital state interest. However, even assuming the limited construction of § 2923.5 proffered by *Mabry*, a state statute that imposes additional disclosure and communications obligations upon a lender prior to commencement of foreclosure proceedings is not "incidental" to lending. Moreover, given the statements in paragraph (a) that "OTS hereby occupies the entire field of lending regulation for federal savings associations," and that "OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation," this Court cannot conclude that state laws that impose upon lenders additional obligations related to foreclosure fall within paragraph (c).

*Giordano v. Wachovia Mortgage, FSB*, 2010 WL 5148428, at * 4 (N.D.Cal., Dec. 14, 2010). This Court finds the reasoning of *Giordano* persuasive and therefore declines to follow *Mabry*. Therefore, the Court finds that Plaintiff's breach of contract claim is preempted by HOLA.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is based on allegations that Aurora: 1) failed to abide by Cal. Civ. Code Section 2923.6,[2] which creates

---

[2]Section 2923.6 provides as follows:

(a) The Legislature finds and declares that any duty servicers may have to maximize net present value

obligations relating to loan modifications; 2) failed to provide a response to a Qualified Written Request ("QWR") as required under RESPA, 12 U.S.C. § 2605(e)(1)(B); 3) refused to disclose "requested documentation" under TILA; and refused to provide an accounting under the FDCPA. To the extent that Plaintiff's claim based on Section 2923.6 is premised on the theory that Aurora failed to meet its obligations with respect to Plaintiff's effort to obtain approval of a loan modification, the claim is clearly aimed at the processing and servicing of Plaintiff's mortgage and therefore is preempted by HOLA for the reasons discussed above. *See Sato v. Wachovia Mortg., FSB*, 2011 WL 2784567, at * 7 (N.D.Cal., July 13, 2011) (holding that claim under Section 2923.6 was preempted by HOLA). The Court does not reach the question of whether the claim is preempted to the extent it is based on the federal statutes invoked by Plaintiff because it finds that those claims fail on other ground, as discussed below.

### 3. Specific Performance

Plaintiff asks the Court for an order requiring Aurora to comply with Cal. Civ. Code Section 2923.5 by contacting her to explore options to avoid foreclosure. As discussed above, the Court finds that Plaintiff's claim under Section 2923.5 is preempted by HOLA. Therefore, her specific performance claim based on the same provision also is preempted.

---

under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a polling [FN1] and servicing agreement, and that a servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(c) This section shall remain in effect only until January 1, 2013, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2013, deletes or extends that date.

11

### 4. Declaratory Relief

Plaintiff requests that the Court issue declaratory relief with respect to "the afore referenced State and Federal statutes." Complaint, ¶ 61. As discussed above, Plaintiff's claims under Cal. Civ. Code Sections 2923.5 and 2923.6 are preempted by HOLA and therefore, Plaintiff's claim for declaratory also is preempted to the extent it is based on these state laws. Similarly, the Court does not reach the question of preemption of the declaratory relief claim to the extent it is based on alleged violations of RESPA, TILA and the FDCPA because these claims fail on other grounds.

### 5. Promissory Estoppel

The Court finds that Plaintiff's promissory estoppel claim fails on other grounds, as discussed below, and therefore does not reach the question of whether the claim is preempted by HOLA.

## D. Whether Plaintiff States a Claim for Breach of Contract

The elements of a cause of action for breach of contract are: 1) the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) damages. *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001). Here, Plaintiff has not alleged the existence of a contract between herself and Aurora. As the loan servicer, Aurora is not a party to the deed of trust and therefore that contract cannot give rise to a breach of contract claim against Aurora. *See Lomboy v. SCME Mortg. Bankers*, 2009 WL 1457738, at * 5 (N.D.Cal., May 26, 2009). Nor has Plaintiff has alleged facts suggesting the existence of an implied contract between Plaintiff and Aurora. *See Mira v. GMAC Mortg.,* 2010 WL 4010148 (N.D.Cal., October 13, 2010). Therefore, Plaintiff's breach of contract claim fails to state a claim under Rule 12(b)(6).

## E. Whether Plaintiff States a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

"In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged." *Inter-Mark USA, Inc. v. Intuit, Inc*., 2008 WL 552482, at *6 (N.D.Cal. Feb. 27, 2008) (citing *Love v. The Mail on Sunday*, 2006 WL 4046180, at *7 (C.D.Cal. Aug. 15, 2006)). This

is because "[i]t is universally recognized [that] the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* at *7. As discussed above, Plaintiff fails to state a claim for breach of contract because she has not alleged the existence of a contract between Plaintiff and Aurora. Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails for this reason as well.

To the extent that Plaintiff's claim is based on alleged violations of RESPA, TILA and the FDCPA, the claim fails on the additional grounds that these underlying claims also are insufficiently pled.[3]

### 1. RESPA

Plaintiff alleges that Aurora violated RESPA by failing to respond to a QWR and to provide other requested documents, in violation of 12 U.S.C. § 2605(e). Plaintiff does not allege actual damage as a result as a violation. To state a claim under RESPA, a plaintiff must allege not only that RESPA was violated but also that damage to the plaintiff resulted from the violation. *See Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J.,2006). Therefore, Plaintiff's claim based on RESPA fails as a matter of law.

### 2. TILA

Plaintiff alleges that Aurora violated TILA but does not identify a specific violation. In any event, the claim fails because a loan servicer is not liable for TILA violations. *See Wilson v. JPMorgan Chase Bank, NA.* 2010 WL 2574032, at * 8 (E.D.Cal., June 25, 2010) (citing 15 U.S.C. § 1641 & *Marks v. Ocwen Loan Servicing*, 2008 U.S. Dist. LEXIS 12175, at *4-5, 2008 WL 344210 (N.D.Cal. Feb. 6, 2008). .

### 3. FDCPA

Plaintiff alleges that Aurora violated the FDCPA by refusing to provide an accounting upon Plaintiff's request. This claim fails because a loan servicer is not a debt collector for the purposes of the FDCPA if it acquired the loan before the borrower was in default. *SeeSchlegel v. Wells Fargo*

---

[3] Because the Court finds that Plaintiff's claims based on Cal. Civ. Code Section 2923.5 and 2923.6 are preempted by HOLA, it does not reach Defendant's remaining arguments regarding the sufficiency of these claims.

*Bank, N.A.*, 2011 WL 2621668, at *3 (N.D.Cal., July 05, 2011). Because Aurora took over Plaintiff's loan servicing before she was in default and not for the purposes of debt collection, it is not liable under the FDCPA.

### F. Whether Plaintiff States a Claim for Specific Performance

Specific performance is a remedy that may be awarded where a breach of contract is established if certain other requirements also are satisfied, including inadequacy of a remedy at law. *See* 5 Witkin Cal. Proc. (4th Ed.), Pleading § 740. As discussed above, Plaintiff has not alleged the existence of a contract. Therefore, her claim for specific performance fails as a matter of law.

### G. Whether Plaintiff States a Claim for Declaratory Relief

Declaratory relief is an equitable remedy which fails to the extent that the underlying claims fail. *See Glue-Fold, Inc. v. Slaughtterback Corp.*, 82 Cal. App. 4th 1018, 1023, n. 3 (2000). Because Plaintiff's underlying claims fail, so too does her claim for declaratory judgment.

### H. Whether Plaintiff States a Claim for Promissory Estoppel

Plaintiff alleges in support of her claim for promissory estoppel that Aurora promised that it would not foreclose on her while evaluating her for loan modification. Complaint, ¶ 64. A claim for promissory estoppel requires that the following elements be established: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 890 (1976). Plaintiff has not alleged reliance or injury as a result of the reliance, given that Aurora has not yet foreclosed on the property and in any event, Plaintiff alleges in her Complaint that Aurora had already concluded its evaluation of Plaintiff's request and denied it when it recorded the notice of trustees sale.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED. Plaintiff's claims are dismissed with leave to amend. An amended complaint, if any, shall be filed within thirty (30) days of the date of this order. The Motion to Strike is DENIED as moot.

IT IS SO ORDERED.

Dated: August 11, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge